IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 7:25-MJ-2506 |
| | § | 7:25-MJ-2518 |
| | § | |
| BERTHA CASTILLO | § | |
| RODOLFO CASTILLO | § | |

**GOVERNMENT'S APPEAL TO THE DISTRICT COURT OF
THE MAGISTRATE'S ORDER OF RELEASE**

In support of this appeal the Government states:

I.

The defendants, Bertha Castillo and Rodolfo Castillo, are charged by individual criminal complaints with smuggling goods from the United States, 18 U.S.C. 554, and laundering of monetary instruments (18 U.S.C. 1956). Ms. Castillo is also charged with inducing and encouraging an alien to reside in the United States, in reckless disregard of the fact that such residence is or would be a violation of law (8 U.S.C. 1324(a)(1)(A)(iv). Bertha Castillo and Rodolfo Castillo are husband and wife, and together they operate Oro Ropa Usada, LLC, a used clothing warehouse that they have operated for twenty some odd years. Pretrial Report (PSR) at 2. According to their interviews as reflected in the Pretrial Services Report, they earn $4,000 per month and $4,500 respectively from the Ropa Usada and have $37,000 in savings and $75,000 in cash. *Id*. They are United States citizens, and lifelong residents of Mc Allen. In fact, Mr. Castillo is a McAllen City Commissioner.

The Castillos' alleged smuggling and money laundering operations center on the their Ropa Usada, from which they illegally smuggle used clothing into Mexico—an activity that violates

1

both United States and Mexican law. *See Complaint*. According to the criminal complaint, Mr. Castillo bragged of his ties to Mexican law enforcement and his ability to guarantee safe shipment of smuggled, contraband goods for clients into the interior of Mexico—including a guarantee in which he obligated himself to pay half the value of any load lost to his customers. *See id*. Mr. Castillo also spoke of his connections to an elite, anticorruption Mexican government police force—possessed, ironically, of a reputation for incorruptibility—and of his ability to bribe them to ensure the safe passage of smuggled, contraband goods for clients into the interior of Mexico. *See id*.

The Castillos also possess wealth and assets totally out of proportion to their declared monthly incomes, above. *See Defendant PSRs*. This includes the estimated 100,000 to 300,000 US Dollars in cash agents discovered at the Castillo residence when executing the search warrants from which the criminal complaints followed (cash that appeared comingled with the approximately 20,000 US Dollars an undercover source gave Mr. Castillo to launder); a rental property; a Mercedes G-wagon and two other new automobiles (a jeep and a truck); the impressive Castillo residence, *see Search Warrant*; and two houses in which the Castillo children live.

The Castillos also possess much more extensive travel histories to Mexico than their interviews with Pretrial Services reflect—the Pretrial Services reports significantly underrepresented this travel in comparison with each's border crossing history as provided by HSI.

Taken together, the above three reasons combine to make clear that the Castillos pose a serious risk of flight: they possess corrupt connections at the highest levels of Mexican law enforcement sufficient not only to sustain their own ropa usada but to ground a sideline—as evidenced by Mr. Castillo's conversation with the undercover source in the Complaint where he accepted 20,000 US Dollars to launder through ropa usada into Mexico as well as his explanation

as to how he could guarantee such smuggle goods safe passage—in guaranteeing, via bribes to Mexican law enforcement, safe passage of contraband into the interior of Mexico. Those connections, together with assets far out of proportion to their declared income, make them flight risks: they can afford to flee to Mexico and set up shop there.

At the detention hearing, counsel for Mr. Castillo made much of the fact that Castillo had been aware of the charges against him but chose to self-surrender. This argument does not hold. Mr. Castillo initially declined to meet agents at the ropa usada for the execution of the search warrants—at the time he was unaware that his wife had been detained. Once his wife had been taken into custody, however, Castillo agreed to self-surrender. If both are granted bond, they are in a position to flee together.

On November 3, 2025, U.S. Magistrate Judge Juan F. Alanis, sitting in McAllen, entered an order of release, allowing Mr. Castillo to be released on a $100,000 secured bond with a $10,000 deposit, and Ms. Castillo to be released on a $75,000 secured bond with a $7,500 deposit. The Government requested a stay of this order in the Magistrate's court in order to allow the Government time to file an appeal in the district court, and the Magistrate agreed to enter a stay.

The Government requests that Castillos be held without bond as the Government believes each presents a serious risk of flight and that there is no condition or combination of conditions that can guarantee each's presence before this Court. The Government bases this motion on the circumstances of the crime alleged, the strength of the evidence in this case, and the history and characteristics of the defendants. See 18 U.S.C. Section 3142(g).

For these reasons the Government files this appeal of the Magistrate's—now stayed— order and requests that a hearing be set in this matter.

Respectfully submitted,
Nicholas J. Ganjei

UNITED STATES ATTORNEY

*/s/ Benjamin S. Lyles*

Patricia Cook Profit

Assistant United States Attorney

Southern District of Texas

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of October, 2025, a copy of the foregoing Appeal was emailed to the attorney of record for the defendant in this case.

*/s/ Benjamin S. Lyles*

Patricia Cook Profit

Assistant United States Attorney

Southern District of Texas